UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| ANNE GANEM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:12-CV-00128-GZS |
| | ) | |
| | ) | |
| LIBERTY LIFE ASSURANCE | ) | |
| COMPANY OF BOSTON, | ) | |
| | ) | |
| Defendants | ) | |

**MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION
FOR DISCOVERY AND TO MODIFY THE RECORD**

This action arises under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 et seq. Plaintiff Anne Ganem has filed a motion requesting leave to conduct discovery and modify the administrative record (ECF No. 17). For reasons that follow, the motion is granted in limited part.

**BACKGROUND**

Plaintiff's First Amended Complaint (ECF No. 18) relates that she was a sales associate with Lowe's for approximately two years and that she participated in employee benefit plans offering short term disability and long term disability insurance. Plaintiff alleges disability based on "severe pain and fatigue caused by fibromyalgia." (Am. Compl. ¶ 9.) Defendant Liberty Life Assurance paid Plaintiff short term disability benefits but denied her claim for long term disability benefits, both initially and over her appeal. (Id. ¶ 11.) The plan designates Defendant the sole and exclusive adjudicator of claims appeals. (Id. ¶¶ 12-13.) Had Defendant approved

Plaintiff's claim, Defendant would have paid the long term disability benefits from its own funds. (Id. ¶¶ 14, 44.)

According to the Complaint, Defendant referred the claims file to two medical consultants for review. The first consultant, Dr. Tanya Lumpkins, MD, allegedly concluded that the file supported the fibromyalgia diagnosis and the presence of certain medication side effects. (Id. ¶ 15.) Dr. Lumpkins allegedly opined that Plaintiff "would be unrestricted when it comes to physical function," but that she would suffer certain medication side effects that preclude working at unrestricted heights, driving a company vehicle, working with heavy machinery, or working with safety-sensitive material. (Id. ¶ 19.) The second consultant, "Dr. Lobel," also reviewed the file. He returned an opinion stating that Plaintiff "does not have medical condition(s) associated with impairment," that she has "no restrictions and limitations," and that she has "the capacity to perform sustained full time unrestricted work." (Id. ¶ 16.)

Plaintiff otherwise alleges that Defendant:

(1) "failed to follow its own internal guidelines requiring . . . a Technical Claims Management Services referral when confronted with a claimant who meets the diagnosis for fibromyalgia" (Id. ¶ 22)[1];

(2) "failed to follow its own procedures regarding the comparison of the demands of a job as described and occupations as performed in the national economy" (Id. ¶ 23[2]);

(3) failed to consider "additional, relevant materials" submitted in support of Plaintiff's claim after Defendant had already denied her appeal (Id. ¶ 25[3]); and

(4) "acted in bad faith by favoring the opinions of its hired doctors over the medical evidence and opinions provided by [Plaintiff's] treating physicians" (Id. ¶ 32[4]).

---

[1] See also Am. Compl. ¶¶ 29, 31, 38, 41, 46.
[2] See also id. ¶¶ 29, 31, 38, 46.
[3] See also id. ¶¶ 30, 39. The additional materials appear to consist of a vocational assessment. Id. ¶ 30.
[4] See also id. ¶¶ 32, 38, 45.

As alleged in Plaintiff's First Amended Complaint, Defendant was not only the final decision maker with respect to her claim for benefits, but also the party that would pay the benefits it awarded. Plan administrators who serve the employee benefits market in this dual role are understood to operate under the cloud of a "structural conflict." Denmark v. Liberty Life Assur. Co., 566 F.3d 1, 7 (1st Cir. 2009). When the plan administrator has been assigned special discretionary authority to make benefits determinations, despite the presence of the structural conflict, courts are directed to "review benefit-denial decisions for abuse of discretion, considering any conflict as one of a myriad of relevant factors." Id. at 9 (citing Met. Life Ins. Co. v. Glenn, 554 U.S. 105, 117 (2008)). Because structural conflicts are a factor, "courts are duty-bound to inquire into what steps a plan administrator has taken to insulate the decisionmaking process against the potentially pernicious effects of structural conflicts." Id. These prophylactic steps are to be made part of the record and, because this is so, plan administrators routinely supply the Court with an affidavit outlining the same. Defendant has supplied such an affidavit in the Administrative Record, pages 1 through 5.

Heather Heins, manager of Defendant's Appeal Review Unit, declares under penalty of perjury that the Administrative Record "includes all documents submitted, considered, or generated in the course of making the benefit determination." (Heins Decl. ¶ 4.) She further attests that the employees who make claims decisions "are not evaluated or compensated on the basis of the amount or number of claims paid or denied," that Defendant "in no way discourages its employees from paying claims that are covered and payable," that employees are "evaluated on the quality and accuracy of their claims decisions," and that they "do not consider any interest of Liberty Life, financial or otherwise, when making claims decisions." (Id. ¶ 7.) Heins identifies the senior case manager who first reviewed and denied Plaintiff's claim, the manager's

manager who approved the decision, and the appeal review consultant who considered the appeal.  (Id. ¶¶ 10-11.)  According to Heins, an appeal review consultant does not discuss a claim with the case manager and both the claims department and the appeal unit "are completely separate from its financial and underwriting departments."  (Id. ¶ 12.)

Heins attests that Defendant uses "third-party medical vendors to arrange reviews of claimants' medical records," and that, while it does sometimes request review by a particular medical certification or specialty, the vendor maintains the discretion to assign files to particular physicians.  (Id. ¶ 13.)  Defendant does not look to consulting physicians to make benefit determinations, but rather requests that the physicians "answer specific and varying questions posed to them by the Case Managers or Appeal Review Consultants."  (Id.)  Heins declares that Defendant has no affiliation with the outside vendors or their stable of physicians, compensates the vendors pursuant to arrangements agreed upon prior to the referral, issues payment to the vendors that do not vary based on the opinion expressed by the physician, and does not know how the vendors compensate the physicians in turn.  (Id. ¶ 14.)

## DISCUSSION

In ERISA cases, discovery is constrained.  Judicial review of a benefits determination ordinarily is to be based on the same record that was before the claims administrator.  Liston v. Unum Corp. Officer Severance Plan, 330 F.3d 19, 23 (1st Cir. 2003) (stating that review is presumptively "on the record made before the entity being reviewed" and that "some very good reason" is required to deviate from that presumption).  "Because full-blown discovery would reconfigure that record and distort judicial review, courts have permitted only modest, specifically targeted discovery in such cases."  Denmark, 566 F.3d at 10.  Even in the area of structural conflict, discovery "must be allowed sparingly and, if allowed at all, must be narrowly

tailored so as to leave the substantive record essentially undisturbed." Id. Discovery on the topic should exist only where there are gaps or ambiguities in the record or to ensure that documented procedures were followed. Id.

Plaintiff proposes that she be permitted to conduct discovery (1) "related to the procedural process of claims decisions"; (2) "to determine if plan provisions have been applied consistently with respect to similarly situated claimants"; and (3) "relating to Liberty's conflict of interest in determining the Plaintiff's claim for long term disability benefits." (Pl.'s Mot. to Conduct Discovery and Modify the Admin. R. at 1-3, ECF No. 17.) Plaintiff also requests that the Record be modified in certain particulars. (Id. at 3-4.) These issues are addressed in turn.

**1.    The procedural process of claims decisions.**

"Plaintiff requests that the record be supplemented with all documents evidencing the procedure used by Liberty . . . in review of Plaintiff's claims." (Id. at 1.) Plaintiff observes that the First Circuit, in Orndorf v. Paul Revere Life Ins. Co., wrote that "evidence outside the administrative record might be relevant to a claim of . . . prejudicial procedural irregularity in the ERISA administrative review procedure." 404 F.3d 510, 520 (1st Cir. 2005). In this regard, Plaintiff believes that she should be permitted to depose each of the decision makers who reviewed her claim. (Mot. at 2.) What Plaintiff omits from her motion, however, is the "some very good reason" that is required before the court should authorize discovery.

Plaintiff has alleged in her pleading that there is an internal guideline that requires a "Technical Claims Management Services referral" because she based her claim on a fibromyalgia diagnosis. (Am. Compl. ¶ 22.) Plaintiff also alleges that Defendant failed to follow a procedure related to comparing the demands of Plaintiff's actual job with the demands of that occupation as performed in the national economy. (Id. ¶ 23.) In her Motion, Plaintiff

5

contends she should be awarded discovery because Defendant, in "bad faith," never disclosed the existence of either the guideline or the procedure during the pendency of her claim. (Mot. at 3.) According to Plaintiff, she should be allowed to discover "what policies were actually used" and should have "broader access to Liberty Life's claims manuals in light of the fact that relevant material . . . was withheld from her." (Id.)

On November 7, 2011, I conducted a telephonic conference related to Plaintiff's request to modify the record. The modifications she has requested are discussed below, but the discussion reflected that Plaintiff acquired copies of both the written guideline and the written procedures through her counsel's independent initiatives. It also is apparent that her challenge to the merits will contend that Defendant failed to follow the guideline and procedure, although in her motion for discovery she does not give specifics about what the deviation was or what her theory of discovery would be, only that she wants Defendant's entire claims manual as a sanction for bad faith and to be able to depose every decision maker who reviewed her claim.

Defendant does not dispute that the copies of guidelines and procedure Plaintiff acquired are discoverable, but wants them to be treated as proprietary materials as far as the public docket is concerned. A review of this guideline (actually captioned as "Policies Procedures and Exceptions" number 11.082.01.1099) reflects that it does call for a referral process. There is no indication that it otherwise calls for any different claims review procedure. Defendant's counsel represented at the telephonic hearing that the TCMS procedure merely provides that claims based on certain medical conditions must be referred to certain in-house claims handlers. Counsel also represented that there are no other policies, procedures, or guidelines related to fibromyalgia or to the TCMS referral process and he offered to seek a supporting affidavit from Defendant.

Clearly, Plaintiff has a right to access and utilize in her merits presentation any written rule, guideline, protocol, policy, procedure or like written materials that bear on her claim for disability benefits. 29 C.F.R. § 2560.503-1(g)(1)(v)(A). If there are any further materials pertaining to the procedures or standards for handling fibromyalgia claims, TCMS referrals, or job versus occupation determinations, Defendant is ordered to produce them to Plaintiff and to notify the Court so it can be arranged for their inclusion in the administrative record. Defendant is further ordered to supply an affidavit attesting to the existence or non-existence of any such written materials. The affiant will also attest whether the individuals who reviewed Plaintiff's claim were members of the TCMS referral group at the time. Plaintiff's request for depositions and further discovery on the topic of procedural process is denied.

**2.      Consistent application of plan provisions**

As Plaintiff states, ERISA regulations require that plans "establish and maintain reasonable procedures," 29 C.F.R. § 2560.503-1(b), including "safeguards designed to ensure and to verify that benefit claim determinations are made in accordance with governing plan documents and that, where appropriate, the plan provisions have been applied consistently with respect to similarly situated claimants," id. § 2560.503-1(b)(5). For this reason, Plaintiff contends that she should be authorized to conduct discovery to determine whether Defendant maintains such safeguards and, if so, how they have been applied. Also, Plaintiff would like to know "the number of claims based on fibromyalgia that have been granted or denied . . . and all documents indicating how many initial long term disability claims based on fibromyalgia have been overturned on administrative appeal." (Mot. at 2.)

Even in the context of non-ERISA litigation, this sort of expansive request for discovery concerning the universe of comparator cases would be received poorly. In the ERISA context, of

course, there needs to be a "very good reason" for any discovery. Plaintiff has failed to supply the particulars that would enable the Court to deduce the presence of a very good reason for discovery along these lines. For example, Plaintiff has not offered even a plausible basis for inferring that she has been treated differently from any other claimant seeking long term disability benefits under the plan based on fibromyalgia. By comparison, in Cannon v. UNUM Life Insurance Company, I ordered discovery to enable a better understanding of UNUM's use of a specific plan provision related to mental illness. 219 F.R.D. 211, 214 (D. Me. 2004). That discovery, it must be noted, was limited to "production of internal memoranda and other documents that serve to clarify or otherwise expand upon the meaning of the mental illness limitation," including the in-house understanding of the policy terms "dementia" and "other conditions not listed." Id. (citing 29 C.F.R. § 2560.503-1(g)(1)(v)(A)).

Discovery in Cannon also extended to disclosure of any available "administrative precedents" running directly to the narrow question at hand: whether drug-induced dementia is an 'other condition not listed' to which Unum will not apply the mental illness limitations" and the "procedures Unum has in place to comply with its fiduciary obligation to ensure that the mental illness provision is 'applied consistently with respect to similarly situated claimants.'" Id. (quoting 29 C.F.R. § 2560.503-1(b)(5)). The discovery ordered in Cannon did not include depositions and broad discovery pertaining to other claimants with the same condition and depositions were not authorized. See id. at 216 (denying discovery into the "particulars of other claims," but requiring that "if Unum maintains guidelines or has produced memoranda, tables or listings that serve to expand upon the partial listing of causes contributing to dementia that will not be subjected to the mental illness limitation . . . , it will produce the same."). See also Glista v. UNUM Life Ins. Co., 378 F.3d 113, 122 (1st Cir. 2004) (approving of district court's

discovery restrictions and differentiating between document discovery designed to "shed light on the 'legal' rule the Plan applies" as opposed to discovery that would introduce "facts about other persons").

### a. Consistency safeguards or policies

In this case, the declaration Defendant has included in the Administrative Record to address the fairness of its claims administration process does not speak to the issue of whether it has procedures, processes, or safeguards in place to ensure consistent application of plan provisions with respect to similarly situated claimants. However, Plaintiff has not identified any key plan terminology upon which her claim for benefits turned. In Cannon, I concluded that discovery about administrative precedent was particularly relevant because of the relative ambiguity of the plan provision in dispute. Here, Plaintiff has not similarly targeted her request. In terms of deciding the ultimate question in this case, Plaintiff has not described how the presence or absence of an internal policy relating to "administrative precedent" would assist the Court in the review of Defendant's claim denial, such as by informing the Court of the administrator's customary construction of ambiguous policy language. Therefore, I deny this discovery request.

### b. Fibromyalgia data

I also deny the far broader-reaching request for data related to the number of fibromyalgia claims that have been granted and denied and for "all documents" indicating the number of initial fibromyalgia claim denials overturned on administrative appeal. Assume for the sake of argument that the data would show that fibromyalgia claims have a low incidence of success when it comes to LTD benefits, statistically speaking. The question that would remain for the Court is whether or not Defendant's denial of Plaintiff's claim was an abuse of discretion.

This would be determined based on whether the decision was reasoned and supported by substantial evidence. Cusson v. Liberty Life Assur. Co., 592 F.3d 215, 223 (1st Cir. 2010). The Court could not simply overturn the administrative decision and direct an award of benefits because fibromyalgia claims fare poorly on average. If this were an acceptable analytical approach, then individuals seeking LTD benefits based on conditions with a high incidence of success would be the real beneficiaries because it would be far more striking if their claims were denied. Data showing that fibromyalgia claimants fare poorly on average would only be consistent with a denial of Plaintiff's claim. Ultimately, the disability analysis is an individualized assessment and a statistical analysis is not going to assist the Court in the process of reviewing an administrative decision based on one person's medical records and claim file.

**3.    Conflict of interest**

In this final category of discovery, Plaintiff requests "discovery relating to the doctors hired by Liberty to review her claim and which demonstrates the greater weight which Liberty gives to the reports of its own doctors over those of treating physicians." (Mot. at 3.) In her reply memorandum, Plaintiff adds that she wants the kind of discovery allowed in Achorn v. Prudential Insurance Company of America, No. 1:08-cv-125-JAW, 2008 U.S. Dist. Lexis 73832, 2008 WL 4427159 (D. Me. Sept. 25, 2008). She says she is "amenable to structuring the discovery to inquire into the compensation, usage rates and outcomes of referrals to the firms MLS Group and MCMC as opposed to Dr. Tanya Lumpkins and Dr. Steven Lobel individually." (Reply Mem. at 6.) However, Plaintiff also expands her request in her reply memorandum, proposing that discovery reach "the compensation and incentive structure of Liberty Life employees who participate in the claims review and appeals process." (Id.) In particular, she

"moves to be allowed to conduct discovery as to compensation, promotion and incentives regarding the individuals who reviewed her claim." (Id. at 7.)

    a. Defendant's in-house compensation system

The request for further discovery of Defendant's systems for compensation, promotion, and "incentives" is denied. Defendant has addressed these concerns in the Heins Declaration. Plaintiff has not made any initial showing that Defendant's internal management or compensation structure results in an "enhanced" conflict of interest and the structural conflict that is inherent in its role as final decision maker and payer of successful claims is already a factor for consideration.

    b. Medical-consultant discovery

As far as medical-consultant discovery is concerned, Defendant maintains that the Heins Declaration puts this to rest as well because Defendant paid MLS and MCMC directly, rather than the physicians, and because the amount of compensation paid does not vary according to the opinion that is delivered. (Def.'s Response at 10, ECF No. 21.) Defendant observes that "there is nothing improper about seeking and relying on the opinions of non-treating, non-examining physicians," and that, "[o]bviously, [it] must pay for these reviews" and could only satisfy Plaintiff's suspicions if it somehow found physicians willing to volunteer their time. (Id. n.5.)

In Achorn, I partially granted a discovery request by ordering the disclosure of information related to the defendant's utilization of certain medical consulting firms.[5] But see

---

5    The discovery authorization in Achorn read as follows:

    Prudential is ordered to disclose the following to Achorn on or before October 30, 2008:

    1. The rate and amount of compensation paid to the two third-party firms in question for their services, including compensation for the services of any other third-parties engaged by them, in turn, to review Achorn's claim for benefits.
    2. The total number of claims administered by Prudential under the subject MBNA Group Long Term Disability Plan in 2005, 2006, 2007, and through the second quarter of 2008.

11

Fortin v. Hartford Life & Accident Ins. Co., No. 1:11-cv-00230-DBH, 2011 U.S. Dist. Lexis 137118 (D. Me. Nov. 29, 2011) (denying such discovery on the grounds that "it would add nothing to this record in terms of the decision made in this individual case" and that "this Court is not in a position to evaluate the merits of [multiple] years of denied claims under this disability plan"). Not unlike my order in Achorn, in Grady v. Hartford Life & Accident Ins. Co., No. 2:08-339-DBH, 2009 U.S. Dist. Lexis 19920, 2009 WL 700875 (D. Me. Mar. 12, 2009), Magistrate Judge Rich authorized the plaintiff to propound one set of up to 20 interrogatories and one set of document requests designed to explore the relationship between the structurally-conflicted defendant therein and its chosen medical consulting firm.[6] The Court has no data reflecting what discovery ever actually resulted from these authorizations, if any. The parties in Achorn filed a stipulation of dismissal shortly after the order authorizing discovery, presumably due to settlement. The parties in Grady filed a stipulation of dismissal, presumably for the same reason, but only after the defendant obtained a confidentiality order to protect any disclosure it should make in connection with Judge Rich's order.

---

>   3. The total number of claims referred to in question 2 that were referred to the identified third-party firms, with separate figures provided for each firm.
>   4. The total number of claims referred to in question 3 that resulted in a recommendation by the third-party reviewer that benefits be denied or terminated.
>   5. The total number of claims referred to in question 4 that actually resulted in a denied claim.

Achorn, 2008 U.S. Dist. Lexis 73832, *17-18, 2008 WL 4427159, *6-7.

[6]     The interrogatories and document requests authorized in Grady were limited to the following subject matters:

>   (i) the corporate and/or contractual relationship between the defendant and UDC, (ii) the reason why the defendant directed UDC to contact only two treating sources, (iii) the proportion of the defendant's claims sent over the past three years for physician review to UDC versus to other medical review firms, if any, and (iv) for that time period, the portion of such claims sent to UDC and to other medical review firms, if any, in which a medical review was completed and sent to the defendant, and the defendant ultimately denied the claim.

Grady, 2009 U.S. Dist. Lexis 19920, *14-15, 2009 WL 700875, *5.

The basic assumption underlying this kind of discovery is that it will allow a plaintiff to explore the correlation between consultant referrals and claim denials, presumably so that the Court might better discern the relative weight to assign to the medical opinions that result from the referral process. However, there is no information before the Court that presently would call for an inference that the referral process in this case was biased. Nor would it be clear that the system is biased if medical-consultant referrals, on average, result in denied claims. Presumably referrals are not sought in every case. Presumably denials do not result from every referral. There will be some claims for disability benefits so meritorious that claims examiners will grant them without referrals to outside experts. Other claims will raise questions or doubts in relation to whether the claimants are, in fact, totally disabled from sustained work activity. In such cases, the file may contain only evidence submitted by treatment providers, providers who may have biases of their own related to their patients. See Black & Decker Disability Plan v. Nord, 538 U.S. 822, 832 (2003) ("And if a consultant engaged by a plan may have an 'incentive' to make a finding of 'not disabled,' so a treating physician, in a close case, may favor a finding of 'disabled.'"). Referrals for opinions from third-party experts are entirely understandable in such circumstances. The fact that plan administrators retain the medical-consulting firms with their own funds is built into the disability insurance marketplace. Ultimately, these circumstances are something we all must consider when deciding whether to buy the products offered in this marketplace.

In the context of structural conflicts, discovery is the exception rather than the rule. Courts treat structural conflict as a factor to be weighed when reviewing administrative decisions. The same approach should apply in the context of medical-consultant referrals. The concern over consultant bias, after all, is a subset of the concern over structural conflict. The

supposition is that private medical-referral firms, recognizing that their product has a direct impact on their client's finances, seek to please the client (and not the claimant) to the extent they are able. Nord, 538 U.S. at 832 (acknowledging appeals court's "concern that physicians repeatedly retained by benefits plans may have an 'incentive to make a finding of not disabled in order to save their employers money and to preserve their own consulting arrangements'") (quoting Regula v. Delta Family-Care Disability Survivorship Plan, 266 F.3d 1130, 1143 (9th Cir. 2001)). The legal expectation, of course, is that the consultants will exercise their professional judgment in an objective and unbiased manner. The idea that routine discovery along the lines outlined in Achorn and Grady is going to establish in a given case whether a consulting expert evaluated the claim in an unbiased fashion is questionable.

     The Court understands the nature of this monetary conflict regarding consultants as well as it understands the nature of the larger structural conflict that arises from plan fiduciaries deciding the claims they would have to pay. In the context of the larger structural conflict, higher courts have determined that discovery is the exception and not the rule and they have accounted for the limitation by making the conflict a factor to be considered as part of the standard of review in close cases. Nothing in Plaintiff's presentation persuades me that this is a special case that justifies an exception to the limitations placed on discovery in ERISA benefits-denial cases. I am simply not persuaded that the proposed medical-consultant discovery would tend to materially modify the way in which this Court reviews the reasonableness of Defendant's decision. For this reason, the request for medical-consultants discovery is denied.

**4.      Request to modify the Record**

In addition to seeking discovery, Plaintiff wants to have the Administrative Record modified in certain respects. I held the November 7 telephonic hearing to address, primarily, these issues.

a.  Confidential designations

Pages 70, 71, 81, and 82 of the Administrative Record are at present entirely redacted and read only "Proprietary and Confidential." Pages 70 and 81 are the TCMS procedure discussed above. Pages 71 and 82 are the job versus occupation procedure. Plaintiff objects to Defendant's redaction of these procedures. Plaintiff has the original pages and intends to use them in her merits briefing. (Mot. at 3.) Defendant does not object to the Court's review and consideration of the document in question, but merely objects to including them in the public record. (Def.'s Response at 11.) At my direction, Defendant filed with the Court unredacted complete copies of the pages in question. They are now included in the Administrative Record and are reposed in a sealed manila envelope. The Clerk will indicate on the docket that these pages have been introduced and admitted to the Record.

b.  Additional redactions

Page 55 of the Administrative Record reflects another redaction of approximately one paragraph in size in relation to Claim Note 10. Page 56 has two similar redactions in relation to Phone Note 3 and Phone Note 4. Plaintiff has not had an opportunity to see the original text. Plaintiff argues that she is entitled to see the original of page 55 "because it directly pertains to the decision made . . . and it relates to Liberty's classification of her occupation." (Mot. at 4.) She does not seek the original of page 56. In response, Defendant says that the redacted text on Page 55 concerns another claimant and was "mistakenly made part of the electronic claim notes

concerning Ganem's claim." (Def.'s Response at 11.) Defendant produced the original of pages 55 and 56 for in camera review ahead of the November 7 telephonic hearing. It is apparent that all of the redactions pertain to another claimant and were mistakenly entered into Plaintiff's claim file. Plaintiff's request to see the redacted paragraph on page 55 is denied.

## CONCLUSION

Plaintiff's Motion for Discovery and to Modify the Record (ECF No. 17) is GRANTED IN PART. The Administrative Record is modified to include sealed originals of pages 70, 71, 81, and 82. If there are any further rules, guidelines, protocols, policies, procedures or the like pertaining to the procedures or standards for handling fibromyalgia claims, TCMS referrals, or job versus occupation determinations, Defendant is ordered to produce them to Plaintiff and to notify the Court so it can be arranged for their inclusion in the administrative record. Defendant is further ordered to supply an affidavit attesting to the existence or non-existence of any such written materials. The affiant will also attest whether the individuals who reviewed Plaintiff's claim were members of the TCMS referral group at the time. The affidavit and any additional materials that must be produced pursuant to this Memorandum of Decision shall be added to the record no later than November 15, 2012. Plaintiff's further requests for discovery are denied.

## CERTIFICATE

Any objections to this Order shall be filed in accordance with Federal Rule of Civil Procedure 72.

*So Ordered.*
November 9, 2012         /s/ Margaret J. Kravchuk
                         U.S. Magistrate Judge