UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ANNE GANEM, | ) |
| | ) |
|     Plaintiff | ) |
| | ) |
| v. | ) 1:12-cv-00128-GZS |
| | ) |
| LIBERTY LIFE ASSURANCE | ) |
| COMPANY OF BOSTON, | ) |
| | ) |
|     Defendant | ) |

**ORDER RE: RENEWED MOTION TO
CONDUCT DISCOVERY (ECF NO. 40) AND
RECOMMENDED DECISION RE:
MOTION TO AMEND COMPLAINT (ECF NO. 42)**

On November 9, 2012, I issued a memorandum of decision granting in limited part Plaintiff Anne Ganem's motion for discovery and to modify the record in this ERISA benefits denial case. (ECF No. 26.) Ganem has now filed two additional discovery-related motions. On March 20, 2013, she "renewed" her motion to conduct discovery, claiming that Defendant Liberty Life failed to comply with my prior order regarding discovery, and, on March 21, 2013, she filed a motion to amend the complaint to set forth a claim for monetary damages pursuant to 29 U.S.C. § 1132(c) based on what she described as newly discovered evidence. I now grant in part and deny in part the former and recommend that the court deny the latter motion. I further direct that the parties submit a joint proposed briefing schedule by June 7, 2013, failing which cross motions for judgment on the record will be due by June 14, 2013, or ten days following final resolution of these motions, whichever occurs first.

Ganem's current pleading is her first amended complaint (ECF No. 18), which asserts three counts: (1) a claim for long term disability benefits; (2) a claim for breach of fiduciary

duty; and (3) a claim for attorney's fees and costs. The proposed second amended complaint adds the following additional factual allegations:

> 27. Plaintiff discovered through independent investigation a significant number of documents generated or adopted by Liberty Life that directly relate to the management and determination of claims based on fibromyalgia. Those documents are as follows:
>
>   - A Manual titled Manage Complex Disabilities (MCD) which classifies fibromyalgia as a complex disability and as a subjective diagnosis and delineates step-by-step claims management procedures for these claims. This manual also indicates that an MDS or Managed Disability Services review should be done in MCD claims.
>
>   - A Manual titled Into the Unknown – Investigating subjective claims, which specifically addresses fibromyalgia cases and indicates that vocational assessments are part of the evaluation
>
>   - A Manual titled Managed Disability Services (MDS) covers procedures and policies for claims based on fibromyalgia and specifically indicates that a diagnosis of fibromyalgia requires an immediate referral to MDS
>
>   - A Document titled Initial Investigation, LTD which contains specific questions to be asked of claimants with fibromyalgia
>
>   - Non-verifiable Position Paper that defines fibromyalgia as a verifiable diagnosis but a diagnosis where the degree of impairment needs to be carefully considered
>
>   - A Document titled Subjective (self reported) Claims Protocol and the Descriptive Management Algorithm
>
>   - A Manual titled Objectifying a Subjective Claim
>
>   - A Manual titled Subjective Claims Investigations which covers fibromyalgia specifically and addresses the rising cost of subjective claims as well as how they are to be handled
>
>   - A Manual addressing Standard vs. Complex Claims which lists fibromyalgia specifically
>
>   - TCMS referral form

       - Disability Claims Operations policy titled Independent Examination/Review Questions which lists questions to be asked regarding fibromyalgia

       - A Document containing specific case management referral questions for MDS

28.  Liberty Life failed to follow its own procedures relating to claims based on a diagnosis of fibromyalgia by failing to refer Plaintiff's claim to Managed Disability Services.

29.  Liberty Life failed to ask all of the questions prescribed by the document entitled Independent Examination/Review Questions in the Disability Claims Operations Manual when it submitted requests to Independent Medical Examiners.

30.  Liberty Life failed to follow all of the fibromyalgia specific guidelines and protocols enumerated in the Manage Complex Disabilities Manual.

(Proposed Second Amended Complaint, ECF No. 42-1.)  In addition, in a new count four, Ganem seeks to advance a claim under 29 U.S.C. § 1132(c)(1)(B).  (Id. ¶¶ 49-53.)  Section 1132(c) allows a claim for damages for failure or refusal of an administrator "to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary."  The background for the proposed count four grows out of prior proceedings in this court concerning the proper scope of Ganem's ERISA discovery.  That background is related in the context of the following discussion of Ganem's renewed motion to conduct discovery and modify the administrative record.

***Renewed Motion to Conduct Discovery and Modify the Administrative Record (ECF No. 40)***

       On September 13, 2012, Ganem, through her counsel, Attorney Mariah Holder, filed a motion requesting discovery and attaching a proposed request for the production of documents, dated September 12, 2012.  In one of her requests, Attorney Holder requested "[a]ll portions of the Liberty Life claims manual relevant to or consulted in determination of Anne Ganem's claim for long term disability benefits."  (Proposed Request No. 11, ECF No. 17-1.)  As of the date of

Ganem's motion, Liberty Life had already filed with the court the administrative record.  On November 9, 2012, I issued a memorandum of decision containing the following order:

> If there are any further rules, guidelines, protocols, policies, procedures or the like pertaining to the procedures or standards for handling fibromyalgia claims, TCMS referrals, or job versus occupation determinations, Defendant is ordered to produce them to Plaintiff and to notify the Court so it can be arranged for their inclusion in the administrative record.  Defendant is further ordered to supply an affidavit attesting to the existence or non-existence of any such written materials.

(Memorandum of Decision on Pl.'s Motion for Discovery and to Modify the Record at 7, ECF No. 26.)  That order was based on two things:  (1) Orndorf v. Paul Revere Life Insurance Company, in which the First Circuit wrote that "evidence outside the administrative record might be relevant to a claim of . . . *prejudicial procedural irregularity* in the ERISA administrative review procedure," 404 F.3d 510, 520 (1st Cir. 2005) (emphasis added);  and (2) Department of Labor regulation 29 C.F.R. § 2560.503-1(g)(1)(v)(A).  The identified Department of Labor regulation governs ERISA claims procedure and requires that the plan administrator, in the event of an adverse benefit determination, provide a claimant with notification identifying, among other things, those rules, guidelines, protocols, and similar criteria "*relied upon* in making the adverse determination" or a statement indicating that such criteria were relied upon and that a copy of the criteria will be provided upon request.  Based on the regulation, I concluded that Ganem "has a right to access and utilize in her merits presentation any written rule, guideline, protocol, policy, procedure or like written materials that *bear on* her claim for disability benefits."  (Memorandum of Decision at 7 (emphasis added).)  Consistent with this interpretation of the regulation, I ordered, as excerpted above, that Liberty Life produce those written criteria that "pertain[] to the procedures or standards for handling fibromyalgia claims, TCMS referrals, or job versus occupation determinations."  Id.

In response to the order, Liberty Life filed a supplemental declaration by Heather Heins, a manager in Liberty Life's appeal review unit (ECF No. 28). Ms. Heins is the Liberty Life affiant whose original declaration is part of the administrative record and who previously stated that the administrative record "includes all documents submitted, considered, or generated in the course of making the benefit determination." In response to my order, Ms. Heins now declares the following under penalty of perjury:

> 3. Liberty Life acts as claims administrator for large numbers of different group employee disability benefit plans sponsored by employers throughout the United States. Liberty Life maintains, in the ordinary course of its business, a confidential and proprietary Policies Procedures and Exceptions ("PPE") database. PPEs are guidelines available to claims specialists to refer to, if necessary, in the course of adjudicating a claim for disability benefits. Whether or not an individual case manager refers to any PPEs in the course of adjudicating a claim depends upon the specific facts and issues of the claim as well as the experience and expertise of the case manager.
>
> 4. Liberty Life has a PPE captioned "Technical Claim Management Services" (the "TCMS PPE"). The TCMS unit is part of Liberty Life's Claims Department and is made up of experienced case managers. These case managers assist with the initial review of claims when deemed necessary. Liberty Life does not view or interpret the TCMS PPE as mandating that a claim involving fibromyalgia (or any diagnosis) be referred to the TCMS unit. In this case, the initial review of Ganem's claim for LTD benefits was undertaken by Brian Terry, Senior Case Manager. Mr. Terry was not part of the TCMS unit in June 2011, but has since been assigned to the unit. Appeals of adverse benefit determinations are not referred to the TCMS unit, but rather are handled by Liberty Life's Appeals Unit. Ganem's appeal was decided by Nancy Winterer, who serves as an Appeal Review Consultant in Liberty Life's Appeals Unit.
>
> 5. Other than the TCMS PPE, there are no PPEs concerning TCMS referrals or the handling of fibromyalgia claims. Other than the PPE captioned "Job Versus Occupation Determinations," there are no PPEs concerning job versus occupation determinations.

(Supplemental Heins Declaration, ECF No. 28.) Ms. Heins's supplemental declaration amounts to a sworn representation that Liberty Life's Policies Procedures and Exceptions database contains the rules, guidelines, protocols, and similar criteria that its claims administrators refer

5

to, as needed, when making benefits determinations. Additionally, Ms. Heins attests that a TCMS-assistance referral is not mandatory with fibromyalgia claims and was not used for Ganem's claim. Lastly, for present purposes, Heins attests that there is no PPE specific to fibromyalgia claims and that there is only one job-versus-occupation PPE.

Ganem contends that Heins is not being truthful because Ganem's counsel has in her possession several Liberty Life "documents, policies, and manuals" that reference fibromyalgia and/or Liberty Life's TCMS unit. (Renewed Motion to Conduct Discovery at 2 (listing twelve documents).) Ganem argues (id. at 3-4) that she should be permitted to conduct discovery, including depositions, because Liberty Life essentially flouted this court's order to produce all of the written criteria it has that "pertain[] to the procedures or standards for handling fibromyalgia claims, TCMS referrals, or job versus occupation determinations." (Memorandum of Decision at 7.)

In opposition to the motion, Liberty Life discusses the merits of the case to some extent, explaining that it has not disputed Ganem's fibromyalgia diagnosis, only the extent of her disability, presumably making this argument to support its assertion (made in a footnote) that "[w]hether or not an individual claims specialist refers to any PPE in the course of adjudicating a specific claim depends on the specific facts of the claim." (Def.'s Objection re. Discovery at 2-4 & n.4, ECF No. 49.) Liberty Life acknowledges that Ganem is entitled to obtain certain documents related to her denied claim, but cites subsections (j) and (m) of the Department of Labor's claims procedure regulation, 29 C.F.R. § 2560.503-1, to support an argument that the regulation does not call for the production of an insurer-administrator's entire claims manual. (Id. at 4-5.)

The production obligation established in subsection (j) includes the following requirement respecting notifications of benefit determinations on administrative review:

> A statement that the claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits. Whether a document, record, or other information is relevant to a claim for benefits shall be determined by reference to paragraph (m)(8) of this section.

29 C.F.R. § 2560.503-1(j)(3). The definition supplied by subsection (m) reads:

> A document, record, or other information shall be considered "relevant" to a claimant's claim if such document, record, or other information
>
> (i) Was relied upon in making the benefit determination;
>
> (ii) Was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination;
>
> (iii) Demonstrates compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5) of this section in making the benefit determination; or
>
> (iv) In the case of a group health plan or a plan providing disability benefits, constitutes a statement of policy or guidance with respect to the plan concerning the denied treatment option or benefit for the claimant's diagnosis, without regard to whether such advice or statement was relied upon in making the benefit determination.

Id. § 2560.503-1(m)(8) (emphasis added). In addition to these provisions, subsection (j) also provides that "[i]n the case of a group health plan or a plan providing disability benefits" the notification/production will include the same list of items found in subsection (g), which pertains to initial benefit determinations and which I referenced in my prior order. That list of items is as follows:

> If an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion; or a statement that such rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a

7

>copy of the rule, guideline, protocol, or other similar criterion will be provided
>free of charge to the claimant upon request[.]

Id. § 2560.503-1(j)(5)(i).

Liberty Life is willing to concede, "[f]or purposes of this objection only," that subsection (m)(8)(iv) covers Liberty Life's "internal, non-plan specific, electronic 'claims manual'" to the extent it contains any statement concerning fibromyalgia because that is Ganem's specific diagnosis. (Def.'s Objection re. Discovery at 5 n.5.) Liberty Life regards these materials as "highly confidential and proprietary." (Id. at 5.) Liberty Life explains that, in response to the prior order, it "conducted a word search of its PPE database" and reported that "[o]ther than the TCMS PPE, there are no PPEs concerning TCMS referrals or the handling of fibromyalgia claims" and "[o]ther than the PPE captioned 'Job Versus Occupation Determinations,' there are no PPEs concerning job versus occupation determinations." (Id. at 6-7 (quoting Supplemental Heins Declaration.)

As for the twelve documents identified by Ganem, Liberty Life says that only the TCMS Referral Form can be found in its electronic claims manual. Liberty Life represents that most of the documents are training materials and some do not even relate to LTD claims. (Id. at 8-9 & Appendix A, ECF No. 49-1.) Liberty Life offers to provide copies for in camera review. (Id. at 9 n.10.) Liberty Life also takes issue with Ganem's showing of relevance, asserting that Ganem has made "absolutely no effort to explain how any of these documents are relevant to the Court's review of Liberty Life's benefit determination." (Id. at 9.)

In reply, Ganem emphasizes the broad language used in the prior order respecting discovery, which did not restrict Liberty Life's production to only its electronic PPE database/manual. (Reply re. Discovery at 2, 4-5, ECF No. 53.) As for Liberty Life's challenge that Ganem articulate the relevance of the documents in her possession, she argues that "several

8

of the documents to be introduced directly prescribe the manner in which fibromyalgia claims are to be handled" and that "several . . . define fibromyalgia as a complex or subjective claim and then proceed to describe how to manage subjective or complex claims." (Id. at 5-6.) In her motion Ganem does not articulate why or how the documents would support her argument that benefits were wrongly denied her. However, in her proposed second amended complaint she alleges that Liberty Life failed to follow its procedures by (1) failing to refer Ganem's claim to "Managed Disability Services"; (2) failing to ask its independent medical examiners all of the questions prescribed in the document she describes as "Independent Examination/Review Questions" found in what her proposed complaint calls a "Disability Claims Operations" policy; and (3) failing to follow all of the fibromyalgia-specific guidelines and protocols allegedly found in the "Manage Complex Disabilities" manual. (Proposed Second Amended Complaint ¶¶ 28-30.)

Ganem's presentation does not persuade me that Liberty Life acted in contempt of my prior order or that this case calls for discovery along the lines proposed by Ganem.[1] Ganem's original request for production was limited to portions of the claims manual "relevant to or consulted in determination of" her claim, an apt request that my prior order sought to fulfill. Liberty Life's response indicates (1) that the only relevant portions are the claim-specific portions of its electronic PPE manual/database; (2) that there are no non-PPE written criteria existing outside of the administrative record that actually guided or informed its administrative procedure and decision in this case; and (3) that the relevant PPE criteria have been disclosed.

---

[1] The language of my prior order was interpreted by Ganem, evidently, to require the production of every document in Liberty Life's possession mentioning fibromyalgia, TCMS, or job versus occupation assessments. My use of the word "pertaining" appears to be the source of the confusion. My intention was to covey the idea of materials that were applicable to the claims determination and the administrative review process. Although it is correct to say that the order does not permit Liberty Life to withhold responsive documents just because they are not collected in Liberty Life's electronic PPEs manual, it does not require the production of written materials unless those materials establish or define the claim-specific procedures and standards that Liberty Life's claims administrators were expected to follow with respect to the determination of Ganem's claim.

Based on this response and Ganem's limited showing concerning the actual relevance of the allegedly withheld materials, in terms of how they would actually be used to support her merits presentation, I find no basis to conclude that Liberty Life's production has misrepresented the extent of the administrative record or violated my prior order respecting discovery.

Ganem's request for further discovery is denied. However, Ganem's request for modification of the administrative record is granted, in part. Based on paragraphs 28 through 30 of Ganem's proposed second amended complaint, it appears that Ganem believes that the following documents actually bear upon her merits presentation and she may file them as attachments to her initial merits brief:

> (1) Relevant portions of the manual titled Manage Complex Disabilities that relate to alleged fibromyalgia-specific guidelines and the use of Managed Disability Services;
>
> (2) Relevant portions of an unnamed document containing specific case management referral questions for MDS; and
>
> (3) Relevant Portions of a Disability Claims Operations document that relate to questions for independent medical examinations.[2]

Ganem's request to modify the record is otherwise denied for lack of a sufficient showing of cause.[3] Liberty Life has leave of court to submit in its response to Ganem's initial merits brief a further affidavit concerning the administrative significance of these documents. One week prior to the filing deadline for the initial merits briefs, Ganem's counsel will notify Liberty Life's counsel of the portions of these documents she intends to use. Ganem will file the relevant

---

[2] According to Liberty Life, the TCMS referral form is already in the record. If that is not the case, Liberty Life may file it as well.

[3] In other words, modification of the record is denied with respect to the following: the non-relevant portions of those documents for which modification of the record has been allowed; the "Into the Unknown" manual; the "Initial Investigation, LTD" document; the "non-verifiable position paper"; the "Subjective (self reported) Claims Protocol and the Descriptive Management Algorithm" document; the "Objectifying a Subjective Claim" manual; the "Subjective Claims Investigations" manual; and the "Standard vs. Complex Claims" manual.

portions of the documents in PDF format using the sealed attachments functionality of the CM/ECF system. Within three days Liberty Life will file a motion to seal that complies with Local Rule 7A, if it wishes these materials to remain under seal. Any objection and reply will be governed by Local Rule 7.

*First Motion to Amend (ECF No. 42)*

Ganem states that after "discovering"[4] additional evidence she wishes to add a fourth count for damages pursuant to 29 U.S.C. § 1132(c). Ganem's additional evidence consists of the same collection of documents discussed above that she "believes were within the scope of this Court's order on November 9, 2012." (First Motion to Amend at 1.) The statute in question provides, in pertinent part:

> Any administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this title to furnish to a participant or beneficiary . . . may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

29 U.S.C. § 1132(c)(1)(B). Liberty Life argues that the term "any administrator" does not include an insurance company and that, in any event, penalties are not authorized for an insurance company's failure to produce its internal claims policies, procedures, and manuals, unless the documents in question are plan-specific documents. (Def.'s Objection re. Amendment at 1, 5, ECF No. 50.) For these reasons Liberty Life argues that the motion to amend should be denied as futile. (Id. at 1, 7-9.) Based on my review, I agree that futility of the amendment is the proper ground upon which to deny the motion with respect to the proposed count four.[5]

---

[4] As it turns out, Ms. Holder does not deny that the documents were in her file when the earlier discovery conference occurred, though she says she was not aware of their presence.

[5] Liberty Life also argues that the motion be denied as untimely under the scheduling order. Failure to meet a scheduling order deadline for amendment of the pleadings can amplify a plaintiff's burden by requiring a showing of good cause justifying the late request to amend. El-Hajj v. Fortis Benefits Ins. Co., 156 F. Supp. 2d 27, 34 (D.

11

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, prior to trial a party may amend his pleading once, as a matter of course at the outset of litigation, but may only amend the pleading further with the opposing party's consent or with leave of court. Fed. R. Civ. P. 15(a). When leave of court is called for, the court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). See also Foman v. Davis, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'"). Among the instances when leave to amend need not be allowed is when the proposed amendment would be futile. Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 59 (1st Cir. 1990) ("Where an amendment would be futile or would serve no legitimate purpose, the district court should not needlessly prolong matters.").

I recommend that the court deny Ganem's motion to amend to add a new count because the new count she seeks to pursue is futile. Assuming for the sake of argument (drawing all reasonable inferences in favor of the claimant) that Liberty Life qualifies as "any administrator" for purposes of section 1132(c), the failure to furnish information is only actionable under this provision if the information is information the administrator is "required by this subchapter to furnish." 29 U.S.C. § 1132(c)(1)(B). In other words, a remedy is available only where another ERISA provision creates the duty to disclose information.

---

Me. 2001); Fed. R. Civ. P. 16(b)(4). Ms. Holder's presentation on that front involves the death of her father, who served as Ganem's original counsel, and Ms. Holder's lack of familiarity with the contents of the file as of our prior conference. (Reply re. Motion to Amend at 3, ECF No. 54.) I do not believe that allowing the amendment would unduly water down the good cause standard or result in unfair prejudice for Liberty Life.

Ganem's proposed amended complaint fails to identify any provision found in ERISA that was violated by Liberty Life's failure to furnish her with its internal claims handling guidelines, training manuals, and like materials, which are not plan documents. Instead, Ganem identifies the regulatory requirements found at 29 C.F.R. § 2560.503-1, which are designed to define the extent of notifications issued pursuant to ERISA section 503 (29 U.S.C. § 1133). Ganem contends that because Congress gave the Secretary of Labor authority to "prescribe the format and content of the summary plan description . . . and any other report, statements or documents . . . which are required to be furnished or made available to plan participants and beneficiaries receiving benefits under the plan," 29 U.S.C. § 1029(c), any failure by an insurer-claims administrator to furnish its internal claims handling guidelines and manuals upon request will subject the insurer-claims administrator to liability under section 502(c). However, the courts of appeals that have addressed this contention have rejected it for reasons that are persuasive.

Title 29 does not expressly state that "any administrator" may be subject to personal liability based on the violation of any *rules* issued by the Secretary, but rather based on the violation of certain obligations imposed in Title 29. Consequently, a notice that complies with the express provisions of Title 29 cannot support an action to recover penal damages under section 502(c). Groves v. Modified Retirement Plan for Hourly Paid Employees of the John Manville Corp. & Subsidiaries, 803 F.2d 109, 118 (3d Cir. 1986) ("Because § 502(c) authorizes penalties only for breach of duties imposed by 'this subchapter,' such sanctions cannot be imposed for violation of an agency regulation."); see also Brown v. J.B. Hunt Transp. Servs., 586 F.3d 1079, 1089 (8th Cir. 2009) (explaining that, even assuming that claims manuals are subject to disclosure under the Secretary's section 503 regulations, "a plan administrator may not

13

be penalized under § 1132(c) for a violation of the regulations to § 1133"); Wilczynski v. Lumbermens Mut. Cas. Co., 93 F.3d 397, 406 (7th Cir. 1996) (holding, inter alia, that the sanctions of section 502(c) cannot be imposed for violation of an agency regulation).[6]

Here, Ganem bases her proposed fourth count on obligations existing only in the Secretary's regulations, obligations that are not set forth in the ERISA subchapter of Title 29. Consequently, her proposed count fails to state a claim for which relief may be granted and the proposed amendment should be denied based on futility. This is not to say that claims administrators like Liberty Life are free to disregard the Secretary's regulations,[7] but rather that the Secretary was not delegated authority "to decide that certain conduct may be penalized." Groves, 803 F.2d at 118 n.10.[8]

As for Ganem's proposed allegations in paragraphs 28 through 30 of the proposed second amended complaint, those factual allegations are not required in order for Ganem to pursue those

---

[6] Some circuits also hold that the burdens of section 503 fall only on "the plan" and therefore cannot support section 502(c) claims against administrators. Wilczynski, 93 F.3d at 406; Vanderklok v. Provident Life & Accident Ins. Co., 956 F.2d 610, 618 (6th Cir. 1992); Groves, 803 F.2d at 118.

[7] For example, a violation of the section 503 regulations might support a remand for further administrative proceedings. Syed v. Hercules Inc., 214 F.3d 155, 162 (3d Cir. 2000).

[8] Although the First Circuit has not yet addressed this issue, it has held that an insurer's failure to furnish a claimant with a copy of internal guidelines did not, as a matter of law, violate the disclosure provisions found in ERISA, without addressing the question of whether a violation of the section 503 regulations could support a section 502(c) claim. Doe v. Travelers Ins. Co., 167 F.3d 53, 59-60 (1st Cir. 1999). In Doe, the Court overturned the district court's imposition of penalties for failing to furnish the guidelines, even though provision of the guidelines to the claimant "would likely have been quite helpful" to the claimant's ability to pursue her claim. Id. The Court explained that internal guidelines are not the kind of document that ERISA requires be produced because they are not plan documents. Id. at 60. The Court did not reach the issue of whether a regulatory violation could support a section 502(c) claim because the claimant had not requested the guidelines and production of the guidelines was not "an essential part of Travelers' obligation to supply an explanation for its decision." Id. Here, Ganem has shown that she requested relevant portions of Liberty Life's claims manual. On the other hand, Ganem's request for production was first pressed in the context of this litigation. Section 503 and the related regulations concern notice and disclosure requirements that apply in the context of the administrative process. Arguably, Ganem's proposed count is also futile because her request for internal claims handling materials first came in the context of this litigation and not in the context of the administrative process.

There is one final note concerning First Circuit precedent. In paragraph 53 of her proposed second amended complaint Ganem cites Law v. Ernst & Young, 956 F.2d 364 (1st Cir. 1992). In Law, the First Circuit held that a person who assumes the obligation of disseminating information concerning plan benefits can be subject to section 502(c) liability even though he is not the designated administrator with respect to that duty. Id. at 372-73. This recommendation is fully consistent with Law because I am not recommending that the court deny the opportunity to amend based on a finding that Liberty Life cannot be regarded as an administrator under section 502(c).

14

arguments with respect to her existing counts. For this reason, I recommend that the court deny the motion with respect to these new allegations as well and allow the matter to proceed to judgment without further delay.

## *Conclusion*

Ganem's "renewed motion" (ECF No. 40) is granted in part. In support of her initial merits brief Ganem may file under seal relevant portions of those documents identified in the foregoing discussion of the motion. Thereafter, Liberty Life may file a motion to seal the documents pursuant to Local Rule 7A, if it so choses. Ganem's "renewed motion" is otherwise denied. With respect to Ganem's motion requesting leave to file a second amended complaint (ECF No. 42), I recommend that the Court deny the motion as futile.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

May 31, 2013                                /s/ Margaret J. Kravchuk
                                            U.S. Magistrate Judge